ORDERED in the Southern District of Florida on September 26, 2008.



_A. Jay Cristol_
A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### Miami Division
### www.flsb.uscourts.gov

**In re:**

**GREATER MIAMI NEIGHBORHOODS, INC.,**
***et al.*,**[1]

**Debtors.**

_____/

**Chapter 11**

**Case No. 08-10694-BKC-AJC**
(Jointly Administered with
Case Nos. 08-10695 thru 08-10699, 08-10701,
08-10702, 08-10704 and 08-10763)

### MEMORANDUM ORDER
### DENYING LMI'S MOTION FOR RECONSIDERATION [C.P. #288]

THIS MATTER came before the Court for hearing on September 3, 2008 ("Hearing") upon the Motion for Reconsideration ("Motion") [C.P. #288] filed by Loss Mitigation of Florida, Inc. ("LMI"), the response ("Response") thereto of Preservation of Affordable Housing, Inc.

---

[1] The last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis: (i) Greater Miami Neighborhoods, Inc. (4297); (ii) Cutler Glen, LLC (8489); (iii) Cutler Manor, LLC (8614); (iv) Cutler Meadows, LLC (8490); (v) Island Place Apartments, LLC (8815); (vi) Middletowne Project, Inc. (9917); (vii) Carib Management, Inc. (0776); (viii) Carib Maintenance Corporation (2275); (ix) Carib Construction Corp. (0359); and (x) Oakwood Project, Inc. (9914).

Case No. 08-10694-BKC-AJC
(Jointly Administered)

("POAH") [C.P. #315], and the Debtors joinder ("Joinder") in POAH's Response [C.P. #316]. For the reasons that follow, the Court denies LMI's Motion. The Court makes the following findings of facts and conclusions of law with respect to the Motion, the Response, the Joinder, and the Hearing:

LMI's Motion concerns the interpretation of terms contained in the Court's Order dated August 1, 2008 approving the sale of the Oakwood Villa Apartments ("Oakwood"), a 200-unit apartment project in Jacksonville, Florida, to Sawgrass Partners, Inc. ("Sawgrass") and granting other relief (the "Sale Order") [C.P. #280], the Court's Order dated April 14, 2008 ("Bidding Procedures Order") [C.P. #189], and Court's Order dated July 8, 2008 ("Settlement Order") [C.P. #259]. In accordance with the agreement of the interested parties, the Settlement Order constituted the settlement contract between LMI, POAH, and the Debtors as there is no separate written instrument. The Court has the inherent authority to interpret the meaning of terms in the Court's own Orders. Notwithstanding, the precedent in this jurisdiction is clear that the issue of interpretation of a contractual term is a question of law that the Court may summarily determine.[2]

---

[2] *See Orkin Exterminating Co., Inc. v. Federal Trade Commission*, 849 F.2d 1354, 1360 (11th Cir. 1988). Because the question of whether a contractual ambiguity exists is also a question of law, it "may be resolved summarily." C. Wright, A. Miller & M. Kane, 10A *Federal Practice and Procedure*, § 2730.1 at 279 (1983) (citing *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir.1967) (other citations omitted). A contract term is ambiguous if "reasonably susceptible to more than one interpretation." *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780 (11th Cir.1982). But "[a]n ambiguity in a contract cannot be created by the mere assertion of a party to it." The fact that the meaning of a contract term is disputed likewise reveals no ambiguity. *Vreeland v. Federal Power Comm'n*, 528 F.2d 1343, 1351 (5th Cir.1976).

*See also, Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996). [T]he terms of a contract provide the best evidence of the parties' intent; *see McGhee Interests, Inc. v. Alexander Nat'l Bank*, 102 Fla. 140, 135 So. 545, 547 (1931), and where the language is plain a court should not create confusion by adding hidden meanings, terms, conditions, or unexpressed intentions, *see Dahl-Eimers*, 986 F.2d at 1382; *Carey*, 367 F.2d at 941. Moreover, in determining whether a contract is ambiguous, the words should be

Case No. 08-10694-BKC-AJC<br>(Jointly Administered)

LMI seeks reconsideration of the Court's ruling concerning the division of the sale proceeds as between the Debtors and LMI. Prior to the bankruptcy filings, LMI purchased Oakwood at a sheriff's sale for $1.00. The sheriff's sale was the result of a lien foreclosure by a plumbing contractor that was owed approximately $20,000. The plumbing contractor assigned its final judgment to LMI. Shortly after the bankruptcy filings, Debtor Oakwood Project, Inc. (one of the affiliated Debtors herein) filed an adversary proceeding to avoid the transfer to LMI as a fraudulent transfer or a preferential transfer.

In the adversary proceeding, the Court ordered mediation and Judge Olson served as the mediator. As a result of the mediation, the Debtors, LMI, and POAH entered into a settlement agreement that is set forth in the Settlement Order. The parties did not enter into a separate written settlement agreement. The Settlement Order provides for a division of certain of the sale proceeds to be derived from a sale of Oakwood. LMI contends that the division set forth in the Sale Order is not consistent with the terms of the Settlement Order.

LMI argues that the term "overbid" was not properly defined in the Orders and, as a result, an ambiguity exists. LMI contends the ambiguity lies in section (b)(vi)(2) of the Settlement Order which reads "plus the Overbid Amount as a reimbursement of administrative legal fees and costs associated with the disputes concerning the Property in this bankruptcy case." LMI's position is that, according to section (b)(vi)(2), the Debtors were to receive only a portion of the Overbid Amount to cover attorneys' fees and expenses related to the adversary proceedings. In contrast, the Debtors' position is that, according to section (b)(vi)(2), the

---

given their natural, ordinary meaning, *Emergency Assoc. v. Sassano*, 664 So.2d 1000, 1003 (Fla. 2 DCA 1995); *Continental Casualty Co. v. Borthwick*, 177 So.2d 687, 689 (Fla. 1 DCA 1965), and ambiguity does not exist simply because a contract requires interpretation or fails to define a term, *Dahl-Eimers*, 986 F.2d at 1382.

Case No. 08-10694-BKC-AJC
(Jointly Administered)

Debtors were to receive the total Overbid Amount, regardless of the exact amount of its attorneys' fees and costs.

LMI's interpretation of the term "overbid" is not supported by the record in this matter. Rather, it is clear that the Court's Bidding Procedures Order, Sale Order, and Settlement Order designate $100,000 as the cash component portion of the minimum overbid to be paid to the estate and that the sharing portions of the Orders do not include this $100,000 amount. In fact, if the Court were to accept LMI's interpretation literally, which it does not, the Court could rule that the entire $821,010 "overbid" should be paid to the estate. However, this is not how the Court defined "overbid," and as the Eleventh Circuit has ruled, an ambiguity "does not exist merely because a contract can possibly be interpreted in more than one manner." *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 409 (11th Cir. 1989).

The Settlement Order relies on and refers to the Bidding Procedures Order which, on page 10, states that the minimum cash component to be paid to the estate as part of the "Minimum Overbid" is $100,000. The purpose of this minimum overbid was to assure that a competing bidder would have to beat POAH's "stalking horse" bid by $100,000, thereby assuring that the estates would receive at least $100,000 for the expense and effort of going through an auction process. This was made clear to all parties.

The Settlement Order states that LMI will share in the proceeds of sale only if the sale price paid by the successful purchaser is greater than the purchase price agreed to be paid by POAH (under its Purchase and Sale Agreement for Oakwood) *plus* the overbid amount. Although "overbid amount" was not defined in the Settlement Order, it is obvious this term referred to the minimum overbid amount of $100,000, as set forth in the Bidding Procedures Order. Thus, as consideration for LMI's agreement to allow Oakwood to be sold at auction, free

Case No. 08-10694-BKC-AJC
(Jointly Administered)

and clear of its claimed title interest, the Debtors agreed to allow LMI to share in the sale proceeds *but only after* the Debtors received the first $100,000. The clear intent was for the estates to receive the minimum overbid amount before any distribution to LMI, which was consistent with this Court's prior Orders. Moreover, the agreed Sale Order delineated the $100,000 as part of the initial distribution to the Debtors' estates and LMI's counsel had the opportunity to review and approve the Order prior to submission. However, LMI did not submit an objection with this Court until the final day permitted to object to the Sale Order.

Under the terms of the Settlement Order, the division is as follows: the Debtors get the first $100,000 (the minimum overbid amount), the Debtors get the next $45,000, LMI gets the next $200,000 and, finally, LMI and the Debtors divide the remaining funds 80% to LMI and 20% to the Debtors. Based on this schedule, the Debtors should receive approximately **$240,204** as a result of the overbid proceeds.[3]

As provided in paragraphs 5(c), (e) and (f) of the Sale Order, Sawgrass, in addition to paying the $821,020 overbid amount, must also (a) provide $60,675 to the estates (as per the POAH Purchase and Sale Agreement), and (b) pay the POAH Break-Up Fee (which consists of $165,000 plus the amount necessary to repay the Interim Operations Loan for Oakwood of $73,305) and an Expense Reimbursement up to a maximum amount of $100,000. LMI does not share in the Break-Up Fee and Expense Reimbursement or in the amount of the note.

This Court previously determined that the overbid is $820,021 and that, of this amount, the estates will receive and retain the amounts identified in the Sale Order. Therefore, for the

---

[3] The Court recognizes that the respective parties are entitled to other funds at closing above and beyond the overbid proceeds. By this Order, the Court is not affecting any other payments due to any party beyond the $100,000 minimum overbid due to the Debtors addressed herein.

Case No. 08-10694-BKC-AJC<br>(Jointly Administered)

reasons stated herein and on the record at the Hearing, which are incorporated herein by reference, it is --

**ORDERED AND ADJUDGED as follows:**

1.   LMI's Motion is denied;

2.   The Sale Order shall govern the distribution of the $821,020 proceeds including, without limitation, providing for payment of the first $100,000 to the Debtors' estates and to be used in accordance with other Orders of this Court;

3.   The Court reserves jurisdiction with respect to all matters arising from or related to the construction, interpretation, enforcement or implementation of this Order.

# # #

Copy to:

Jonathan C. Vair, Esq.
    STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami FL 33130
Telephone 305-789-3200
Facsimile  305 789-3395
E-mail: **JVair@swmwas.com**

*(Attorney Vair shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*